NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELLA RABER,<br><br>                    *Plaintiff*,<br><br>    v.<br><br>EXPRESS SCRIPTS HOLDING COMPANY<br>and JOHN SHEA,<br><br>                    *Defendants*. | Civil No.: 18-cv-8639 (KSH) (CLW)<br><br><br>OPINION |

**Katharine S. Hayden, U.S.D.J.**

## I. Introduction

This matter comes before the Court on the motion (D.E. 8) of plaintiff Ella Raber to remand this action against defendants Express Scripts Services Company,[1] her former employer, and John Shea, an in-house attorney for Express Scripts. Raber has sued for employment discrimination under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.*, and intentional infliction of emotional distress, based on the termination of her employment. Although the allegations against Shea are sparse, the Court's analysis is governed by fraudulent joinder jurisprudence, which directs an approach "significantly more forgiving" than that governing motions to dismiss. Accordingly, and for the reasons set forth below, the Court is constrained to grant Raber's motion to remand, and declines to adopt the report and recommendation (D.E. 22) recommending that the motion be denied.

## II. Background

The complaint alleges as follows. Raber, a 57-year-old woman, worked for Express

---

[1] Express Scripts asserts, and Raber concedes, that it was incorrectly named in the complaint as "Express Scripts Holding Company," and that its proper name is "Express Scripts Services Company."

1

Scripts for 27 years, most recently in the Franklin Lakes office, and received consistently positive reviews and commendations during her tenure. (Ex. A to D.E. 1, Complaint ¶¶ 1, 4, 5, 9.) Beginning in 2004, Raber began availing herself of the work-at-home policy of Express Scripts' predecessor, Medco Health Solutions, Inc., and for the next 13 years, worked from home for four days each week and in the office once a week. (*Id.* ¶¶ 6-7.) She describes this arrangement as permitting her "better time management abilities" and higher productivity, and asserts that she supervised 8-10 domestic and international contractors and was available around the clock for assistance. (*Id.* ¶¶ 7-8.)

Raber further alleges that during a July 2016 business trip, her manager told her that she would be needed in the office more often. (*Id.* ¶ 10.) Raber responded that she would need to continue working from home because she might have to move to New York City for personal reasons. (*Id.*) The manager allegedly responded by asking, "So, are you too old to drive?" (*Id.* ¶ 12.) Raber responded that the commuting time involved would be more productively spent working. (*Id.* ¶ 13.) A week after the trip, Raber restated by email her request to retain her schedule but did not receive a response. (*Id.* ¶ 14.)

In January 2017, on another business trip, Raber spoke to the manager's supervisor and told him of her prior conversation with the manager. The supervisor told her he would get back to her and that she should continue her current arrangement. (*Id.* ¶¶ 15-16.) He also asked, "If we cannot reach an agreement, will you leave us?" (*Id.* ¶ 16.) Raber responded that she would seek a transfer to another group that would permit her the flexibility she needed to work from home. (*Id.* ¶ 17.) She alleges that the supervisor's "remark to her statement indicated that if [Raber] were to retire, she would have all the flexibility she sought." (*Id.*)

In July 2017, Raber first received negative feedback from her manager for not

"aggressively" taking over a new project. (*Id.* ¶¶ 19, 21.) She was simultaneously working on another major project, which the manager characterized as the "best work she had done that year." (*Id.* ¶¶ 20-21.) But the next month, Raber was criticized at her mid-year review for client service complaints, though neither the manager nor the manager's supervisor could provide examples. (*Id.* ¶ 22.) Thereafter, the topic of Raber working from home was raised again by the manager and supervisor. (*Id.* ¶ 23.) Ten days after her review, on August 28, 2017, Raber was terminated, allegedly for her violation of the work from home policy and poor performance. (*Id.* ¶ 24.) She asserts that she was replaced by a younger person in another office. (*Id.* ¶ 35.)

On February 8, 2018, Raber filed a four-count complaint in Bergen County Superior Court against Express Scripts and Shea, who she alleges had to, and did, review the termination decision and approved it knowing "there were insufficient reasons" to terminate her. (*See id.* ¶¶ 27-28.) She also alleges he was "aware of the prior comments pertaining to [Raber's] age." (*Id.* ¶ 28.) These, together with Raber's assertion that Shea is "in-house counsel and is involved in the employment decisions in the Franklin Lakes office" (*id.* ¶ 3), are the only factual allegations made against Shea in the complaint.

Counts One and Two assert claims under the NJLAD for age discrimination under hostile work environment and adverse employment action theories, respectively. Count Three asserts a claim for intentional infliction of emotional distress based on the termination and "by refusing to respond to her inquiry for a period of over six (6) months." (Compl. ¶ 39.) Count Four alleges that defendants' actions constituted a continuing violation of the NJLAD.[2]

On May 1, 2018, defendants removed the action to this Court, invoking diversity

---

[2] Raber's complaint is hardly a model in terms of making clear which claims she asserts against both defendants, and which she asserts against Express Scripts only. In moving to remand, she relies only on her NJLAD claims as the basis for liability against Shea. As such, the Court will not evaluate whether her tort claim would suffice as a basis for remand.

3

jurisdiction. (D.E. 1, Notice of Removal.) They asserted that Express Scripts is a citizen of Delaware and Missouri and, with Raber being a New Jersey resident, diversity of citizenship existed. They further asserted that the citizenship of Shea (who Raber alleges is a New Jersey resident (Compl. ¶3)), should be disregarded because there is no colorable basis for Raber's claims against him, making his joinder fraudulent.

On May 3, 2018, defendants moved to dismiss the complaint against Shea for failure to state a claim. (D.E. 3, 6.) Express Scripts also answered the complaint. (D.E. 4.) Raber then moved to remand the action, arguing that diversity jurisdiction is lacking because defendants have not shown that Shea was fraudulently joined. (D.E. 8.) In June 2018, Express Scripts moved for sanctions under Fed. R. Civ. P. 11, arguing that Raber's continued pursuit of her claim against Shea warrants an award of attorneys' fees and costs incurred for defendants' motion to dismiss, their opposition to Raber's motion to remand, and their motion for sanctions. (D.E. 15). On September 11, 2018, Magistrate Judge Cathy Waldor issued a report and recommendation (D.E. 22), recommending denial of Raber's motion to remand because Raber had not adequately alleged that Shea had a supervisory role and had not stated an aiding and abetting claim, and therefore did not "plead a valid claim against Mr. Shea under NJLAD." (*Id.* at 3.) Judge Waldor declined to consider Express Scripts' Rule 11 motion, concluding that the record was inadequate to support such relief at this time. No party has filed objections to the report and recommendation.

### III. **Legal Standard**

#### A. Standard of Review

In reviewing a magistrate judge's report and recommendation on a dispositive matter, of which remand decisions are one, *In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998), the

4

district court is to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and may "accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3); L. Civ. R. 72.1(c)(2). If a party does not object to the report and recommendation, the right to *de novo* review may be lost, but the Court nonetheless retains the "'authority and the responsibility to make an informed, final determination.'" *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (quoting *Mathews v. Weber*, 423 U.S. 261, 271 (1976)). In that event, the Court must "'afford some level of review to dispositive legal issues raised by the report,'" a standard the Third Circuit describes as "'reasoned consideration.'" *Id.* (quoting *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)).

### B. Fraudulent Joinder

A civil action initiated in state court may be removed to federal court if the latter would have original jurisdiction. 28 U.S.C. § 1441(a). Original jurisdiction exists if the parties are completely diverse; *i.e.*, every plaintiff is of diverse citizenship from all defendants, and the amount in controversy exceeds $75,000. 28 U.S.C. §1332(a); *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006). A case removed based on diversity jurisdiction will be remanded if the parties are not diverse, 28 U.S.C. § 1447(c), and "[r]emoval statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) (citation omitted). Here, there is no dispute that Raber and Shea are residents and citizens of New Jersey; if Shea is not fraudulently joined, diversity is lacking and the case must be remanded.[3]

---

[3] The amount in controversy requirement is not at issue here.

5

The fraudulent joinder doctrine is "an exception to the requirement that removal be predicated solely upon complete diversity." *Briscoe*, 448 F.2d at 215-16. If the court determines that a defendant's joinder was fraudulent, the citizenship of that defendant is disregarded for purposes of jurisdiction. *Id.* at 216. Joinder is fraudulent if there is "'no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" *Id.* (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)). Whether a claim is "colorable" is a "significantly more forgiving" standard than the motion to dismiss standard. *Freichs v. Lifestar Response Corp.*, 2009 U.S. Dist. LEXIS 103099, at *7 (D.N.J. Nov. 5, 2009) (Debevoise, J.) (citing *Briscoe*, 448 F.3d at 218). The removing party bears a "'heavy burden of persuasion'" in establishing fraudulent joinder, *Batoff*, 977 F.2d at 851 (citation omitted), and if there is even a "possibility" that the state court would determine that the complaint states a cause of action against the resident defendant, this Court must conclude that joinder was proper and remand the case. *Briscoe*, 448 F.2d at 217 (quoting *Batoff*, 977 F.2d at 851-52).

In analyzing a fraudulent joinder claim, the Court assumes the truth of the factual allegations in the complaint and "'resolve[s] any uncertainties as to the current state of controlling substantive law in favor of the plaintiff.'" *Id.* (quoting *Batoff*, 977 F.2d at 851-52). The question is whether the claim against the non-diverse defendant is "wholly insubstantial and frivolous," not whether the plaintiff states a claim against that defendant or can succeed on the merits of the claim. *Id.* at 218. Consequently, "a court may find that a defendant has not been fraudulently joined even though the action may later be dismissed against that defendant for failure to state a claim." *Saddy Family, LLC v. Loud*, 2014 U.S. Dist. LEXIS 88366, at *6 (D.N.J. June 30, 2014) (Pisano, J.). And although the Court may "pierce the pleadings" in a

6

"limited" way, it must not, in so doing, cross the line into deciding the merits of a claim. *See Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990).

IV. **Analysis**

The crux of Raber's argument is that defendants have failed to show that Shea is fraudulently joined. She asserts that Shea's purported involvement in the decision to terminate her – a termination she claims violated NJLAD – provides the basis for a "colorable" claim against him. Defendants counter that Raber's allegations against Shea lack factual support.

Under New Jersey law, a cause of action exists against individual employees or others who "aid" or "abet" NJLAD violations. N.J.S.A. 10:5-12(e); *Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 594 (2008). To qualify, the conduct must be "'active and purposeful.'" *Cicchetti*, 194 N.J. at 594 (quoting *Tarr v. Ciasulli*, 181 N.J. 70, 83 (2004)). The plaintiff must show that "'(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.'" *Id.* (alteration in original) (quoting *Tarr*, 181 N.J. at 84).[4]

Raber does not specifically allege that Shea "aided" or "abetted" Express Scripts' alleged NJLAD violations. She does, however, allege that the termination decision she challenges had to

---

[4] Earlier New Jersey jurisprudence assumed that an individual must also be a supervisor to be individually liable under NJLAD. *See Herman v. Coastal Corp.*, 348 N.J. Super. 1, 27 (App. Div. 2002). *Cicchetti*, a decision of the New Jersey Supreme Court, held that individual liability is limited to "acts that constitute aiding or abetting," 194 N.J. at 568, without requiring that the individual also qualify as a supervisor. Although *Cicchetti* would appear to have settled that question, to the extent any ambiguity remains, *see, e.g.*, *Gibbs v. Massey*, 2009 U.S. Dist. LEXIS 23578, at *12 & n.2 (D.N.J. Mar. 26, 2009) (Salas, J.); *Sussman v. Capital One, N.A.*, 2014 U.S. Dist. LEXIS 151866, at *16-17 (D.N.J. Oct. 24, 2014) (Wolfson, J.), it is resolved in favor of Raber. *Batoff*, 977 F.2d at 852.

7

be, and was, approved by Shea, and that he was aware of the comments she claims rendered her working conditions and termination discriminatory. (*See* Compl. ¶¶ 27-28.) Regardless of whether these allegations are sufficient to survive a motion to dismiss, they are enough, together with applicable New Jersey law, to show that the claim is "possible," and not "wholly insubstantial and frivolous." *Accord Freichs*, 2009 U.S. Dist. LEXIS 103099, at *8 (declining to find fraudulent joinder in the face of similar allegations).

Defendants offer a certification from Shea attesting that he was not asked to review or approve the proposed decision to terminate Raber, and that he only learned of it later. (D.E. 14-2, Shea Cert. ¶¶ 4-7.) But accepting this version of events would put the Court in the position of making credibility determinations and deciding the merits of Raber's claims, which it cannot do. *See Freichs*, 2009 U.S. Dist. LEXIS 103099, at *4 n.3 (role of court is "not to rule on the substantive merits of Plaintiff's legal claims or veracity of the facts" alleged in the complaint). And the exhibits to Shea's certification do not "show[] conclusively" that Raber's claims "could not be truthful." *Id.* The extra-pleading evidence considered in *Briscoe*, upon which defendants rely (D.E. 14, Defs.' Br. 6), is not comparable to Shea's certification. *Briscoe*, 448 F.3d at 220 (in reviewing statute of limitations issue, court may conduct "limited look outside the pleadings" to prior proceedings or other matters subject to judicial notice).

Nor does the certification of defendants' counsel (D.E. 14-1, Bennett Cert.) necessitate the conclusion that Raber's claim against Shea is frivolous. Although the attached exhibits are offered to support defendants' version of events – that Shea was not involved in the termination decision – Exhibit E includes an email from Raber's counsel in which her version is reiterated, which offers reasons (other than an admission of fraudulent joinder) for wanting the case to stay in state court and thus supporting the prior offer to dismiss Shea. Wading into these competing

narratives would force the Court into making substantive merits determinations, which it simply cannot do at this juncture.[5]

Although the report and recommendation recites the proper legal standard for fraudulent joinder questions and initially applies that standard, it ultimately concludes that joinder was not fraudulent because the complaint does not "plead a valid claim" against Shea under NJLAD. (Report & Recommendation 3.) As set forth above, Raber does not need to meet the Rule 12(b)(6) standard to defeat a fraudulent joinder argument. Having given "reasoned consideration" to this dispositive legal issue, the Court declines to adopt the report and recommendation, grants Raber's motion to remand (with the exception of her request for attorneys' fees, which is discussed below), and will direct that this action be remanded to the Superior Court of New Jersey, Law Division, Bergen County.

To the extent Raber seeks attorneys' fees and costs under 28 U.S.C. § 1447(c), the Court denies that request. Generally, attorneys' fees may be awarded in a remand order "'only where the removing party lacked an objectively reasonable basis for seeking removal.'" *Costa v. Verizon New Jersey Inc.*, 936 F. Supp. 2d 455, 467 (D.N.J. Mar. 27, 2013) (Hillman, J.) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). Whether to award fees is a matter of the Court's discretion, *see id.*, and in view of Raber's sparse factual allegations against Shea and the record offered by defendants in opposition to the motion to remand, the Court declines to do so under the circumstances.

---

[5] The Court rejects defendants' additional argument that Raber's belated opposition to their motion to dismiss is grounds for granting their motion to dismiss as unopposed and treating as moot Raber's motion to remand. The Court always has an obligation to assure itself of its own subject matter jurisdiction, a question squarely presented by Raber's motion to remand.

The Court emphasizes that it is not deciding – and indeed lacks subject matter jurisdiction to decide – whether Raber has stated a valid claim against Shea, a particularly complicated question given his asserted role as an attorney acting as such for Express Scripts. Accordingly, defendants' motion to dismiss as against Shea (D.E. 3, 6) will be terminated, and the issue is one for the state court of remand. *See Batoff*, 977 F.2d at 852 ("[I]t is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted."). Similarly, Express Scripts' Rule 11 motion (D.E. 15) would require the Court to make factual and merits determinations not properly before it at this stage, and, as such, it will be denied.

V.     **Conclusion**

For the reasons set forth above, the Court declines to adopt the report and recommendation, and Raber's motion to remand is granted in part and denied in part. While the action will be remanded, Raber will not be awarded attorneys' fees. Defendants' motion to dismiss shall be terminated. Express Scripts' motion for Rule 11 sanctions is denied. An appropriate order will issue.

Date: March 5, 2019

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.